**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MALLORY RUSCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-29 |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR PROSPECTIVE RELIEF AND NOMINAL DAMAGES**

**INTRODUCTION**

1.      On November 2, 2020, the day prior to the general election, Plaintiff Mallory Rusch situated herself within Forest Park so that she could meet with and distribute political literature to volunteers who would themselves distribute it the next day. Shortly after her arrival, she was approached by a park ranger, who told her that political activity is not allowed in the park and, thus, she must leave immediately.

2.      Upon being required to leave by the park ranger, Rusch contacted the Parks Division of the Department of Parks, Recreation, and Forestry to seek an explanation. Although she was aware of § 22.16.070 of the St. Louis Code of Ordinances, which provides that "[n]o person shall deliver any oration, address, speech, sermon or lecture therein without the written consent of the Director of Parks, Recreation and Forestry," as well as § 22.16.090, which prohibits "[a]ll disorderly or indecent conduct, the use of threatening, obscene or profane language, and all games, acts or demeanor calculated or tending to mar or disturb the feelings or enjoyment of the visitors attending public parks, places or squares," Rusch did not think herself to be violating either ordinance and was not aware of any other applicable ordinance. The first official she encountered reiterated that political activity was not allowed in parks and

no workaround was available. Another park ranger later arrived and decided that she could remain to distribute literature to volunteers meeting her so long as she did not have a sign, requiring her to remove the three 2'x3' signs that she had posted around her table to communicate her location to the volunteers. Rusch later learned that a permit is required for political assemblies, meetings, or gatherings in park, § 22.40.030, but believes the requirement does not apply to her expressive activity.

3.     It remains unclear to Rusch why she was required to cease distributing literature in the park and allowed to resume only when she was limited to providing literature to volunteers who were meeting her to obtain it and doing so without any sign identifying herself. Nonetheless, because the broad language of §§ 22.16.070, § 22.16.090, and § 22.40.030 arguably prohibit her expressive activity and she was, in fact, restricted by officials enforcing the City's ordinances from continuing her expressive activity without interference, she now faces two options: either engaging in political expressive activity in the City's parks and facing enforcement of the rules prohibiting it, or self-censoring by engaging in the expressive activity somewhere else, or not at all.

## PARTIES

4.     Plaintiff is a citizen of Missouri.

5.      Defendant, the City of St. Louis, Missouri, is a municipal corporation and political subdivision of the State of Missouri.

## JURISDICTION AND VENUE

6.     Plaintiff brings this case pursuant to the Free Speech Clause of the First Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment and through 42 U.S.C. § 1983.

7.      This Court has jurisdiction under 28 U.S.C. § 1331 as this case "arises under the Constitution of the United States."

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Defendant is located in the city of St. Louis, Missouri, and its actions giving rise to the claim in this suit occurred in the city of St. Louis.

9.      Venue is proper in the Eastern Division of this Court pursuant to E.D.Mo. L.R. 2.07(A)(1), (B)(2).

## FACTS

### *St. Louis Parks*

10.      The city of St. Louis owns and operates 110 city parks under the jurisdiction of its Department of Parks, Recreation, and Forestry.

11.      One of the 110 city parks is Forest Park, so named because most of the tract used for the park was virgin forest land.

12.       At 1,371 acres, Forest Park is among the seventy-five largest municipal parks in the United States and, as is often mentioned, bigger that New York's Central Park.

13.      In 1864, the Missouri legislature authorized an election for St. Louis voters to approve a centrally located park; however, voters overwhelming rejected the proposal.

14.      In 1870, real estate developer Hiram W. Leffingwell announced a plan to create a 3,000-acre park extending west of Kingshighway, but, at the time, only the state legislature could establish a park.

15.      In 1872, the legislature established Forest Park; however, the legislature also extended the boundaries of St. Louis and created a special taxing district, residents of which

successfully challenged the law as unconstitutional. *State ex rel. Chouteau v. Leffingwell*, 54 Mo. 458 (1873).

16.     In 1874, the legislature tried again, this time passing legislation to create Forest Park that withstood legal challenges. *St. Louis Cty. Court v. Griswold*, 58 Mo. 175 (1874).

17.     Today the park attracts more than ten million visitors every year.

18.     The City's Charter provides for a Department of Parks, Recreation, and Forestry led by a Director appointed by the mayor. St. Louis City Charter, Art. XIV, § 14-B.

*Ordinances*

19.     The City's official policies related to operation of its parks are codified in Chapter 22 of the City's Code of Ordinances.

20.     Section 22.16.070 states that "[n]o person shall deliver any oration, address, speech, sermon or lecture [in a park] without the written consent of the Director of Park, Recreation and Forestry."

21.     Section 22.16.090 provides that "[a]ll disorderly or indecent conduct, the use of threatening, obscene or profane language, and all games, acts or demeanor calculated or tending to mar or disturb the feelings or enjoyment of the visitors attending public parks, places or squares are prohibited therein."

22.     Because the park regulations in Chapter 22.16 do not assign a penalty, the general penalty provision of § 1.12.010 provides the penalty for a violation of § 22.16.070 or § 22.16.090.

23.     According to § 1.12.010, "[e]very person convicted of a violation of any section of this Code shall be punished by a fine of not less than one dollar nor more than five hundred

dollars or by imprisonment for not more than ninety days or by both such fine and imprisonment."

24.    The City's policies for park assembly permits constitute Chapter 22.40 of the Code.

25.    Section 22.40.010 declares the general assembly permit policy as:

> Individuals, groups or organizations planning assemblies, meetings or gatherings in City parks at which attendance of one hundred or more persons is expected or solicited shall apply for a permit for the use of a designated area in the parks. Before issuance of a permit, a bond shall be posted in an amount to be determined by the Director of Parks sufficient to cover the repair of damages to the park fixtures and premises at the location to be utilized, including trees, turf and shrubs, the reasonable cost of cleaning the premises from extraordinary debris and litter, and the expense incurred for additional policing and traffic control. If the park area for which a permit has been granted is left in good condition, ordinary wear and tear excepted, and no abnormal expenses have been incurred by reason of the usage, the bond so posted shall be cancelled and obligations thereunder shall be void, otherwise it shall remain in full force and effect to satisfy damages, expenses or cost of repair or restoration.

26.    Section 22.40.020 asserts that "[t]he bond requirement specified in Section 22.40.010 may be satisfied with the posting of a bond secured from a recognized bonding or insurance company, a cash bond or by the written assurance of at least three responsible persons who jointly or severally agree to pay the reasonable costs of damage, cleaning of debris, and additional policing and traffic control. Such determination of the type of bond required shall be in the discretion of the Director of Parks, Recreation and Forestry."

27.    "Political assemblies, meetings or gatherings shall be permitted in City parks under the same terms and conditions," according to § 22.40.030.

28.    Unlike Chapter 22.16's park regulations, Chapter 22.40 has its own penalty provision, which reveals that "[a]ny individual or individuals or the officers of any organization

arranging assemblies, meetings or gatherings in City parks who shall fail to comply with the provisions of this chapter shall be guilty of a misdemeanor and upon conviction thereof shall be fined not less than the sum of twenty-five dollars nor more than the sum of five hundred dollars."

29.     Section 22.04.050 charges the Director of Parks, Recreation and Forestry with responsibility "for the supervision and coordination of all activities of the Department of Parks, Recreation and Forestry" and directs that "[h]e shall also grant all permits to occupy or use portions of any park . . . when the occupancy or use is consistent with the public use thereof and is not inconsistent with any law or general ordinance, and any permit may be revoked by the Director at any time."

30.     Sections 22.16.070, 22.16.090, and 22.40.030 do not include a *mens rea* requirement.

31.     The City's ordinances, including those challenged herein, are enforced under color of law.

*Events Giving Rise to This Suit*

32.     On November 2, 2020, Rusch, situated herself within Forest Park so that she could meet with volunteers and distribute political literature to them so that they in turn could themselves publicly distribute it the next day.

33.     Rusch's purpose in meeting the volunteers was to express her position regarding a ballot measure that would be considered by voters and to provide the volunteers with oral and written information to aid them in spreading this message.

34.     She expected to meet with 40-50 individuals at the park over a four-hour period.

35.     Rusch did not intend to violate any ordinance.

36.     She was approached by a park ranger, who told her that political activity is not allowed in the park and, thus, she must leave immediately.

37.     Although Rusch did not understand what law prohibited her from meeting and speaking with others in a park to advocate her political message and the ranger could not provide her with a citation to any law, she was concerned that she could be arrested.

38.     Upon being told to leave, however, she contacted the Parks Division of the Department of Parks, Recreation, and Forestry to seek an explanation.

39.     Although she was aware of § 22.16.070 and § 22.16.090, she did not think herself to be violating either ordinance and was not aware of any other applicable ordinance.

40.     She subsequently became aware § 22.40.030, but she did not believe her meeting, though political in nature, required a permit.

41.     The first official she encountered at the Parks Division reiterated that political activity was not allowed in parks and no workaround was available.

42.     Another ranger arrived and stated that Rusch could remain to distribute literature to volunteers meeting her so long as she did not have a sign.

43.     Rusch returned to her designated spot in the park and continued her planned expressive activity, except that she did not hold or otherwise display a sign, as she had intended to do before being told that she could not.

44.     Rusch regularly engages in political expressive activity and intends to return to St. Louis parks to do so.

45.     She still does not know why she was required to cease meeting and distributing literature in the park and allowed to resume only when she was limited to providing literature

to volunteers who were meeting her to obtain it and doing so without any sign identifying herself.

46.     As a result of her experiences on November 2, 2020 and her knowledge of §§ 22.16.070, 22.16.090, and 22.40.030, Rusch must choose between either self-censoring—as she did when initially ceased her expressive activity at the direction of a ranger and complied with the restriction that she not have or hold a sign when she was allowed to return her meetings and literature distribution— by limiting her expressive activity so as not to attract attention or searching for and using other non-park alternative locations, or facing the risk that the ordinances will be enforced against her in ways she cannot predict and that violate the Free Speech Clause.

47.     Rusch was injured by being forced to temporarily cease expressive activity on November 2, 2020, having conditions placed on her resumption of expressive activity on that date, and the chilling effect described herein.

## COUNT I

*Section 22.16.070 violates the Free Speech Clause*

48.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

49.     Rusch's November 2, 2020 conduct was expressive activity protected by the Free Speech Clause.

50.     St. Louis parks, including Forest Park, are a traditional public forum.

51.     Section 22.16.070 criminalizes a substantial amount of constitutionally protected activities, such that a substantial number of its applications are unconstitutional judged in relation to its plainly legitimate sweep.

52.     Section 22.16.070 applies to "any oration, address, speech, sermon or lecture," by any person at any part of any park in St. Louis and requires the prior "written consent of the Director of Park, Recreation and Forestry."

53.     Section 22.16.070 does not provide any guidelines for the Director to utilize in deciding whether to grant written consent.

54.     Section 22.16.070 provides no deadline by which the Director must decide whether to grant written consent.

55.     Violations of § 22.16.070 are publishable by a fine, jail time, or both.

56.     Rusch is reasonably chilled by § 22.16.070.

## COUNT II

*Section 22.16.090 violates the Free Speech Clause*

57.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

58.     Rusch's November 2, 2020 conduct was expressive activity protected by the Free Speech Clause.

59.     St. Louis parks, including Forest Park, are a traditional public forum.

60.     Section 22.16.090 is content based on its face because it restricts expressive activity, or not, based on whether a particular expressive activity's content falls within a prohibited category.

61.     Section 22.16.090 is content based in that its applicability to expressive activity, or not, is triggered by the reactions of third parties.

62.     There is no government interest furthered by § 22.16.090 sufficient to sustain a content-based restriction.

63.     Violations of § 22.16.090 are publishable by a fine, jail time, or both.

64.     Rusch is reasonably chilled by § 22.16.090.

## COUNT III

*Section 22.16.090 violates the Due Process Clause*

65.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

66.     Section 22.16.090 fails to provide fair notice of when expressive activity will become illegal based on the often-unpredictable responses of third parties.

67.     Section 22.16.090 inclusion of "tending to" is so vague as to fail to provide fair notice of what expressive activity is illegal and leave the judgment of what violates the ordinance to the subjective opinions of law enforcement.

68.     Section 22.16.090 contains no *mens rea* requirement.

69.     Violations of § 22.16.090 are publishable by a fine, jail time, or both.

70.     Rusch is reasonably chilled by § 22.16.090.

## COUNT IV

*Section 22.40.030 violates the Free Speech Clause*

71.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

72.     Rusch's November 2, 2020 conduct was expressive activity protected by the Free Speech Clause.

73.     St. Louis parks, including Forest Park, are a traditional public forum.

74.     Section 22.40.030 is content based on its face because it applies to expressive activity, or not, based on whether it is "political."

75.     Section 22.40.030 is impermissibly content based because it discriminates against "political" expressive activity by requiring a permit regardless of the number of participants while not requiring a permit for other types of expressive activity unless one hundred or more participants are expected or invited.

76.      Although § 22.16.070, together with § 22.04.050, provide guidelines for the Director to utilize in deciding whether to grant written consent, they provide the Director unfettered discretion without guidelines to revoke any permit at any time.

77.     Section 22.40.020 provides the Director unfettered discretion to decide the form of bond required for a permit.

78.     Section 22.40.010 gives the Director discretion as to the amount of bond required before a permit is issued and requires consideration of costs "for additional policing and traffic control."

79.     The ordinances provide no deadline by which the Director must decide whether to grant a permit.

80.     One who arranges a political assembly, meeting, or gathering in a St. Louis park without a permit faces a fine of up to $500.00.

81.     Rusch is reasonably chilled by the requirement of a permit for a political assembly, meeting, or gathering.

## **PRAYER FOR RELIEF**

WHEREFORE, Rusch prays this Court:

> A.  Grant a preliminary injunction upon motion and a permanent injunction preventing enforcement of §§ 22.16.070, 22.16.090, and 22.40.030;
>
> B.  Enter a declaration that the §§ 22.16.070, 22.16.090, and 22.40.030 are unconstitutional on their face and as applied to Rusch;

C.  Award Rusch nominal damages;

D.  Award Rusch costs and reasonable attorney fees pursuant to 42 U.S.C. § 1988

   and any other applicable provisions of law; and

E.  Allow such other and further relief as this Court finds just and proper under

   the circumstances.

                              Respectfully submitted,


                              /s/ Anthony E. Rothert
                              Anthony E. Rothert, #44827MO
                              Jessie Steffan, #64861MO
                              Omri E. Praiss, #41850MO
                              Kayla DeLoach, #72424MO
                              Molly E. Carney, #70570MO
                              ACLU of Missouri Foundation
                              906 Olive Street, Ste. 1130
                              St. Louis, Missouri 63101
                              Phone: (314) 652-3114
                              arothert@aclu-mo.org
                              jsteffan@aclu-mo.org
                              opraiss@aclu-mo.org
                              kdeloach@aclu-mo.org
                              mcarney@aclu-mo.org


                              Gillian R. Wilcox, #61278MO
                              ACLU of Missouri Foundation
                              406 West 34th Street, Ste. 420
                              Kansas City, Missouri 64111
                              Phone: 816/470-9938
                              Fax: 314/652-3112
                              gwilcox@aclu-mo.org

                              **Attorneys for Plaintiff**

<u>Verification</u>

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing factual allegations are true and correct.


Executed on: January 8, 2021        /s/Mallory Rusch_____

                                    Mallory Rusch